# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAIME E. DAVILA | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) No. 14 C 2743 |
| | ) |
| CAROLYN W. COLVIN, Acting | ) Magistrate Judge Susan E. Cox |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

## ORDER

Plaintiff Jaime E. Davila ("Plaintiff") appeals the Commissioner of Social Security's decision to deny his Supplemental Security Income benefits under Title II of the Social Security Act. We grant Plaintiff's motion for summary judgment [dkt. 15] and deny the Commissioner's motion for summary judgment [dkt. 22]. The Administrative Law Judge's decision is remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's decision to deny him Disability Insurance Benefits under Title II of the Social Security Act.[1] A motion for summary judgment has been filed on behalf of Plaintiff Jaime E. Davila ("Plaintiff"). A motion for summary judgment has been filed on behalf of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"). For the reasons outlined below, we grant Plaintiff's motion [dkt. 15] and deny the Commissioner's motion [dkt. 22]. The Administrative Law Judge's ("ALJ") decision is remanded for further proceedings consistent with this opinion.

Plaintiff was in an accident while at work on January 13, 2010.[2] He was driving a truck when a car crashed in to him, causing a multiple vehicle accident that left Plaintiff with injuries

---
[1] *See* 42 U.S.C. §§ 405(g), 216(i), 223(d).
[2] R. at 711.

1

including damage to his right ankle, right knee, left shoulder, back and neck.[3] Plaintiff began seeing his treating orthopedist, Michael Zindrick, M.D., on January 22, 2010.[4] On June 21, 2011, Dr. Zindrick noted that Plaintiff had back pain that was worse with prolonged sitting.[5] On February 16, 2012, Dr. Zindrick opined that Plaintiff was permanently disabled.[6] Dr. Zindrick again stated on August 31, 2012, that Plaintiff had reached maximum medical improvement, meaning he was permanently disabled, and was not capable of performing gainful employment.[7]

Plaintiff also had to undergo a number of surgeries on his various injuries.[8] For example, orthopedic specialist Dr. Steven Chudik, M.D., performed arthroscopic surgery on Plaintiff's right knee on May 6, 2010.[9] Dr. Robyn Vargo, M.D., performed a right ankle arthroscopy on May 11, 2010.[10] Plaintiff underwent another arthroscopic surgery performed by Dr. Chudik on his left shoulder on October 26, 2010.[11]

Plaintiff requested a second opinion on his condition, and Dr. Zindrick referred him to another orthopedist, Dr. Simon Lee, M.D., who became Plaintiff's treating physician as well.[12] On April 21, 2011, Dr. Lee opined that Plaintiff could perform light or sedentary work.[13] On June 27, 2011, Dr. Lee noted in his post-exam form that Plaintiff needed to alternate sitting and standing fifteen minutes per hour.[14] On September 30, 2011, Dr. Lee's post-physical exam form stated that Plaintiff was limited to alternating sitting and standing thirty minutes per hour.[15]

---

[3] *Id.*
[4] *Id.*
[5] R. at 799.
[6] R. at 929.
[7] R. at 933.
[8] R. at 755.
[9] R. at 760.
[10] *Id.*
[11] R. at 761.
[12] R. at 755-757.
[13] R. at 757.
[14] R. at 792.
[15] R. at 940.

However, he also found that Plaintiff had reached maximum medical improvement, meaning that his condition would not improve beyond the limitations noted in Dr. Lee's report.[16]

Non-treating medical consultants also examined Plaintiff. Dr. Edward Goldberg, M.D., determined on December 20, 2010, that Plaintiff was able to return to work without any restrictions.[17] Dr. Rock Oh, M.D., a state medical consultant, reviewed Plaintiff's file and gave controlling weight to Dr. Lee's opinion, but noted that the allegations of limitations in daily functions were only partially credible given other evidence in the case.[18] On August 31, 2011, Dr. James Hinchen, M.D., another state medical consultant, gave partial weight to Dr. Zindrick's opinion that Plaintiff could not go back to work, but concluded that Plaintiff could perform light or sedentary work.[19] Dr. Rodney Schainis examined Plaintiff on February 8, 2013, and determined that Plaintiff was only capable of standing or walking less than 2 hours per workday and sitting less than 6 hours.[20] Dr. Schainis also noted that Plaintiff should be considered fully disabled.[21] Dr. Schainis's medical findings were added to the record on February 21, 2014, by the Appeals Council as Exhibit 18F.[22]

Plaintiff applied for Social Security Disability benefits on February 28, 2011.[23] His application stated that he received workers' compensation.[24] The Social Security Administration denied Plaintiff's application on June 10, 2011.[25] Upon reconsideration on September 6, 2011, the Administration upheld its decision that Plaintiff was not disabled, and Plaintiff requested a

---

[16] *Id.*
[17] R. at 761.
[18] R. at 777.
[19] R. at 924 (Exhibit 13F).
[20] R. at 947-952
[21] R. at 953.
[22] R. at 5.
[23] R. at 130.
[24] R. at 138.
[25] R. at 66.

hearing before an Administrative Law Judge ("ALJ").[26]

On March 7, 2012, Plaintiff notified the Administration that he did not want his attorney's services any longer and would be representing himself at the hearing before the ALJ.[27] Plaintiff received a packet notifying him of his hearing, which contained information describing his right to counsel.[28] The information included what a representative could do, how much one could charge, and an explanation of a cap of twenty-five percent of past due benefits that an attorney could receive.[29] The information was sent in both Spanish and English.[30] Plaintiff had also previously signed a fee agreement that specified the twenty-five percent cap on attorneys' fees while he had been represented by counsel.[31]

On November 14, 2012, the ALJ, Janice Bruning, held a hearing in which Plaintiff and a vocational expert testified.[32] The ALJ informed Plaintiff that an attorney or non-attorney representative could "help [Plaintiff] obtain information regarding [Plaintiff's] claim, explain the proceedings that occur before [the ALJ], and explain the medical terms in regards to [Plaintiff's] case."[33] The ALJ gave the vocational expert a hypothetical that included the ability to occasionally lift and carry ten pounds, and less than ten pounds frequently, stand and/or walk a total of two hours during the work day with a cane, sit at least six hours with a sit and stand option, meaning after sitting for 45 minutes to be allowed to stand for one or two minutes.[34] The hypothetical also included the limitations that such an individual could never climb ladders, occasionally climb stairs and occasionally bend, stoop and crawl, and reach above the head and

---

[26] R. at 76.
[27] R. at 85.
[28] R. at 97.
[29] R. at 105-106.
[30] R. at 103-106.
[31] R. at 80.
[32] R. at 44.
[33] R. at 48.
[34] R. at 61.

4

outwards frequently with the left arm and hand.[35] The vocational expert testified that a person with Plaintiff's age, education, work experience and the ALJ's hypothetical limitations could work as a hand packager, bench assembler, and order clerk.[36] When asked about job availability if the individual would be off task twenty percent of the day, the vocational expert testified that would be job preclusive.[37]

During the hearing, Plaintiff used an interpreter because, as he testified, he wanted one to be sure he could understand all the terminology used.[38] Plaintiff stated that he has difficulty using his left hand, and that he can make sandwiches, do the dishes, and manage personal care but it is difficult, takes a long time, and cannot be completed at a normal pace.[39] He also testified that his mother-in-law picks up his two-year-old son in the morning and cares for his son during the day, but that Plaintiff drops off his older son at school.[40] Plaintiff further mentioned that he collected unemployment benefits for three weeks before they were terminated because he could not physically seek employment after the accident.[41]

In the ALJ's findings after the hearing, she gave significant weight to Dr. Lee's conclusion that Plaintiff could perform light to sedentary work.[42] However, she gave no weight to Dr. Lee's finding that claimant cannot sit or stand longer than fifteen or thirty minutes.[43] The ALJ stated that she gave no weight to that part of the opinion because there was no evidence to support a worsening of Plaintiff's condition.[44] The ALJ also did not give significant weight to Dr.

---

[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] R. at 49.
[39] R. at 57.
[40] R. at 58.
[41] R. at 51.
[42] R. at 36.
[43] R. at 36-37.
[44] R. at 37.

Zindrick's opinion.[45] The ALJ stated that she gave the opinion "appropriate consideration," but found that the opinion did not provide any specific limitations, only a conclusory statement that Plaintiff is permanently disabled.[46] State medical consultants also concluded that claimant could perform sedentary work, which the ALJ found consistent with the medical record.[47] The ALJ cited Exhibits 9F and 18F when referencing the state medical consultants.[48] Exhibit 18F consists of Dr. Schainis's medical exam notes dated February 8, 2013.[49] Additionally, the ALJ found Plaintiff was not credible because he "insisted on an interpreter yet he spoke English at times during the hearing," he collected unemployment benefits, can tend to daily activities such as hygiene and food preparation, and alleged inconsistencies in child care.[50]

The ALJ issued her decision on January 18, 2013.[51] Based on her determinations, the ALJ found that: (1) Plaintiff has not engaged in substantial gainful activity; (2) Plaintiff has severe impairments including status post right knee tear and arthroscopy, status post right ankle surgery, status post left adhesive capsulitis and surgery, lumbar spine bulging disc, and cervical spine disc bulge; (3) Plaintiff does not have an impairment or a combination of impairments that meets one of the "listings;" (4) Plaintiff has the residual functional capacity to perform sedentary work with limitations such as no more than frequent reaching overhead, no more than occasionally climbing stairs, never ladders and a sit/stand option allowing him to stand one or two minutes after sitting for forty-five, and use of a cane; and (5) there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.[52]

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] R. at 950.
[50] *Id.*
[51] R. at 39.
[52] R. at 34-38.

On February 21, 2014, the Appeals Council denied Plaintiff's request for review of the ALJ's determinations.[53] The decision of the ALJ became the final decision of the Commissioner of Social Security in the case.[54] Plaintiff then brought this action for appeal under 42 U.S.C. §405(g).

**DISCUSSION**

### I. STANDARD OF REVIEW

The ALJ's decision must be upheld if it follows the administrative procedure for determining whether the plaintiff is disabled as set forth in the Act,[55] if it is supported by substantial evidence, and if it is free of legal error.[56] Substantial evidence is "relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[57] Although we review the ALJ's decision deferentially, she must nevertheless build a "logical bridge" between the evidence and her conclusion.[58] A "minimal[] articulat[ion] of her justification" is enough.[59]

### II. THE ALJ IMPROPERLY GAVE LESS THAN CONTROLLING WEIGHT TO THE PLAINTIFF'S TREATING PHYSICIANS' OPINIONS

The "treating physician" rule requires that an ALJ give controlling weight to the medical opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence.[60] If an ALJ does not give the opinion controlling weight, she must evaluate six criteria in deciding how much weight to afford a medical opinion: (1) the nature and duration of the examining

---

[53] R. at 1.
[54] *Id*.
[55] 20 C.F.R. §§ 404.1520(a) and 416.920(a).
[56] 42 U.S.C. § 405(g).
[57] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[58] *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).
[59] *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008).
[60] 20 C.F.R. § 404.1527(d)(2); *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion.[61] An opinion is given controlling weight because "a treating physician has the advantage over other physicians whose reports might figure in a disability case because the treating physician has spent more time with the claimant."[62]

The ALJ's statement that Dr. Zindrick failed to give specific limitations regarding Plaintiff's abilities is not reason enough to give his opinion less than significant weight.[63] She failed to address any of the factors an ALJ is required to assess when subsequently determining weight, such as specialty or length and extent of treatment. Merely making a blanket claim that the ALJ gave the treating physician's opinion "appropriate weight" does not constitute a suitable analysis of the factors when discrediting a whole line of evidence.[64] While the ultimate issue of determining disability is not left up to a treating physician, such an opinion by a doctor indicates that Plaintiff is not capable of performing even light or sedentary work. The ALJ failed to discuss or explain any inconsistencies in the record that would allow her to give the opinion less than controlling weight.

The ALJ also stated that the evidence did not support a worsening of Plaintiff's condition when giving no weight to the part of Dr. Lee's opinion regarding timing of the sit/stand alterative limitation.[65] Both Dr. Zindrick and Dr. Lee noted that Plaintiff's condition was degenerative and

---

[61] 20 C.F.R. § 404.1527(d)(2)-(d)(6); *Harris v. Astrue*, 646 F. Supp. 2d 979, 999 (N.D. Ill. 2009).
[62] *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007).
[63] R. at 37.
[64] *Id.* See *Roddy*, 705 F.3d at 636 (holding the ALJ did not build a "logical bridge" when discrediting a treating physician's opinion by not explicitly addressing the issue and only mentioning in passing his own view of the medical evidence).
[65] R. at 37.

would not improve, and that his disability was permanent; only Dr. Lee opined he could work.[66] A degenerative condition implies that the issues will get worse, especially after the maximum possible medical treatment had been administered.[67]

Courts caution ALJ's against analyzing only medical opinions that support their ultimate decision.[68] Mere differences between medical opinions is not reason enough to find inconsistency and disregard a treating physician's opinion without further analysis.[69] It creates a situation where the ALJ is effectively acting as a physician to substitute her medical opinion for that of a treating physician.[70] Here, the ALJ never discussed the significance of the doctors' differences in opinion on Plaintiff's ability to work in her analysis of how much weight to give the opinions. Finding inconsistencies in medical opinions is a threshold matter that must be addressed in giving less than significant weight to a treating physician. Additionally, the ALJ stated that there was no evidence to support a worsening condition from April of 2011, contrary to both treating physicians' assessments of Plaintiff's condition as degenerative.[71] The ALJ again failed to go through any factors in supporting that conclusion and the subsequent determination of giving no weight to part of Dr. Lee's opinion. Instead, the ALJ acted as a physician and made a determination on her own that Plaintiff's degenerative condition had not worsened, and thus did not support Dr. Lee's opinion. Therefore, the ALJ improperly gave less than significant weight to Plaintiff's treating physicians' opinions by not analyzing the requisite factors.

---

[66] R. at 933, 940.
[67] *Roddy*, 705 F.3d at 637.
[68] *See Moore*, 743 F.3d at 1123 ("The ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it.").
[69] *Oakes v. Astrue*, 258 Fed. App'x 38, 44 (7th Cir. 2007). *See also Gudgel v .Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("a contradictory opinion of a non-examining physician does not, by itself, suffice").
[70] *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000).
[71] R. at 37.

### III. THE ALJ'S DETERMINATION OF THE PLAINTIFF'S CREDIBILITY WAS "PATENTLY WRONG"

Plaintiff challenges the ALJ's determination that his testimony was not credible.[72] Credibility determinations of an ALJ are given substantial deference because she can see and hear the witnesses and assess their credibility.[73] A credibility determination will only be overturned if it is "patently wrong."[74] When an ALJ's determination lacks any explanation or support, it is "patently wrong."[75] Additionally, courts have frequently noted a failure to consider that "the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter" when analyzing testimony.[76]

Here, the ALJ made her decision based on her perceived contradictions that received no explanations. The ALJ failed to keep in mind the differences between managing daily living and meeting the demands of a full time job.[77] The ALJ offered no explanation regarding how Plaintiff's testimony regarding hygiene, food preparation and doing dishes at his own pace equate to Plaintiff being able to perform the demands of a job that require a schedule.[78] Plaintiff even testified that he could not do those things at a normal pace or frequency, often requiring breaks before finishing tasks.[79] He also testified that his mother-in-law cared for his youngest son most of the time, but that he feeds his son.[80] Being able to do one task in caring for a child

---

[72] *Id.*
[73] *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). *See also Harris*, 646 F. Supp. 2d at 992 (noting ALJ's are in the best position to observe a witness).
[74] *Powers*, 207 F.3d at 435.
[75] *Elder v. Astrue*, 529 F.3d 408, 413-414 (7th Cir. 2008).
[76] *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012).
[77] *See Bjornson*, 671 F.3d at 647.
[78] R. at 37.
[79] R. at 57.
[80] R. at 58, 314.

does not mean Plaintiff was inconsistent in stating that his mother-in-law is the primary caretaker of the child.

The ALJ also supported her decision by using the fact that Plaintiff spoke English at times during the hearing against him in making her credibility determination.[81] Plaintiff testified that he brought an interpreter to the hearing to ensure that he could understand all the terminology correctly.[82] However, the ALJ failed to build a "logical bridge" in making that decision, because using an interpreter in that case is not logically inconsistent with Plaintiff speaking English. As Plaintiff testified, he wanted to be sure of the terminology and did not deny being able to speak English.

Finally, the ALJ noted that Plaintiff admitted to collecting unemployment benefits while claiming to be disabled in order to discredit him.[83] The ALJ failed to consider that Plaintiff stated that he only collected the benefits for three weeks before they were terminated because he could not physically seek employment.[84] The ALJ again failed to explain how that makes Plaintiff unpersuasive, nor is it supportive of any inconsistencies in Plaintiff's narrative. Therefore, the ALJ's credibility determination was "patently wrong" because her determinations lacked both explanation and support in the record.

### IV. PLAINTIFF'S WAIVER OF COUNSEL AND ALJ'S DUTY TO DEVELOP THE RECORD

A claimant has a statutory right to counsel at his disability benefits hearing.[85] The claimant can waive this right if the ALJ properly informs him of his rights to make a knowing

---

[81] R. at 37.
[82] R. at 49.
[83] R. at 37.
[84] R. at 51.
[85] 42 U.S.C. § 406; 20 C.F.R. § 404.1700.

waiver.⁸⁶ To ensure a valid waiver of counsel, an ALJ must explain to a pro se claimant "the manner in which an attorney can aid in the proceedings, the possibility of free counsel or a contingency arrangement, and the limitation on attorneys' fees to twenty-five percent of past-due benefits plus court approval of the fees."⁸⁷ If Plaintiff did not validly waive his right to counsel, remand is only necessary if the ALJ did not develop a full and fair record.⁸⁸

At the hearing, the ALJ informed Plaintiff that an attorney or non-attorney representative could "help [Plaintiff] obtain information regarding [Plaintiff's] claim, explain the proceedings that occur before [the ALJ], and explain the medical terms in regards to [Plaintiff's] case," but failed to address the twenty-five percent limit on fees as required for a valid waiver.⁸⁹ However, Plaintiff received a "Your Right to Representation" packet notifying him of his hearing, which contained information describing his right to counsel in both Spanish and English.⁹⁰ Plaintiff had also previously signed a fee arrangement agreement when he was represented by counsel that specified the twenty-five percent stipulation.⁹¹ While the Seventh Circuit has not addressed whether the packet and signed acknowledgement of the information constitute a valid waiver, some district courts have held that the "Your Right to Representation" form, combined with a signed and returned acknowledgment of receipt, satisfies the Seventh Circuit standard.⁹² The record here does not show that Plaintiff signed the receipt, as the forms in the record are blank.⁹³ However, he did sign the fee arrangement waiver and, at the hearing, the ALJ repeated much of

---

⁸⁶ *Thomas v. Barnhart*, 54 Fed. App'x 873, 877 (7th Cir. 2003).
⁸⁷ *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991).
⁸⁸ *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).
⁸⁹ R. at 48.
⁹⁰ R. at 97.
⁹¹ R. at 80.
⁹² *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1141 (N.D. Ill. 2012); *Seamon v. Barnhart*, No. 05–C–13–C, 2005 WL 1801406, at *10 (W.D. Wis. July 29, 2005) ("I conclude that mailing written notices to plaintiff could satisfy the commissioner's burden, but only if the ALJ establishes at the hearing that the claimant received, read and understood the notices.").
⁹³ R. at 107-108.

the information in the packet to him.[94]  The record is thus unclear regarding whether Plaintiff validly waived his right to counsel.  Accordingly, this Court does not reach a decision on this issue, but provides the above guidance to ensure the ALJ properly develops the record regarding Plaintiff's waiver of counsel on remand.

## V. THE ALJ IMPROPERLY CITED TO THE RECORD

The Supreme Court has held that "courts have the power and the duty to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake."[95]  Such administrative errors may be harmless, thus courts will not remand where they are convinced the ALJ would reach the same result on remand despite the error.[96]  However, courts caution that though ALJ "might have reached the same result [that] does not prove that her failure to consider the evidence was harmless.  Had she considered it carefully, she might well have reached a different conclusion."[97]

In her decision dated January 18, 2013, the ALJ found that the state agency consultants' opinions were consistent with the record, but then cited to Exhibits 9F and 18F.[98]  However, Exhibit 18F was added to the record by the Appeals Council in February of 2014, and consists of a medical record from February 8, 2013 (*i.e.*, after the ALJ issued her opinion).[99]  Since the ALJ failed to mention the names of the state consultants to whom she was referring, it cannot be clear if this was a clerical error or if the ALJ failed to properly review the record.  Exhibit 13F consists of Dr. Hinchen's consulting opinion, and may be the exhibit to which the ALJ meant to cite.[100]  This court acknowledges that may have been a harmless clerical error, and is thus not a basis for

---

[94] R. at 48, 80.
[95] *American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145 (1958).
[96] *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).
[97] *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010).
[98] R. at 37.
[99] R. at 5, 947-950.
[100] R. at 924.

remand. However, the ALJ needs to clarify the issue upon remand with careful consideration of the record.

## **CONCLUSION**

For the foregoing reasons, we remand this matter for further proceedings consistent with this opinion. Plaintiff's motion for summary judgment is granted [dkt. 15] and the Commissioner's motion for summary judgment is hereby denied [dkt. 22].

**ENTER:**
**DATED:** June 29, 2015                                          /s/ Susan E. Cox

                                                                              Susan E. Cox
                                                                              United States Magistrate Judge